**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLORADO**

| | |
|---|---|
| In re: | |
| SALVADOR J. RULLAN, | Case No. 22-11991 KHT |
| Debtor. | Chapter 7 |
| CHRISTOPHER THOMPSON, | |
| Plaintiff, | Adversary No. 22-01226 KHT |
| v. | |
| SALVADOR J. RULLAN, | |
| Defendant. | |

**ORDER ON SUMMARY JUDGMENT**

THIS MATTER comes before the Court on the *Defendant's Motion for Summary Judgment* (the "Motion," docket #34), filed by Salvador J. Rullan ("S. Rullan"), and the Response thereto (docket #41), filed by the Plaintiff, Christopher Thompson ("Thompson"). The Court has reviewed the pleadings and the file, and is advised in the premises, and hereby finds and concludes as follows:

## I.    JURISDICTION

This Court has jurisdiction over this adversary proceeding under 28 U.S.C. §§ 157 and 1334. This is a core proceeding under 28 U.S.C. § 157(b)(2)(I) because it involves a determination as to the dischargeability of debt. Venue is proper in this district under 28 U.S.C. §§ 1408 and 1409.

## II.    BACKGROUND[1]

In or around 2011, Thompson acquired a significant number of Bitcoin through cryptocurrency mining and direct purchases. Thompson later joined a gym in Castle Rock, Colorado, which was owned and operated by Christopher Stolzman ("Stolzman"). Over time, Stolzman and Thompson developed a friendship. During their conversations,

---

[1] The following facts, which are undisputed except as indicated, are taken as true or viewed in the light most favorable to Thompson.

ORDER ON SUMMARY JUDGMENT
Adversary No. 22-01226 KHT

Thompson described his Bitcoin holdings to Stolzman and expressed an interest in cryptocurrency investing.

Stolzman introduced Thompson to S. Rullan, who worked at Stolzman's gym as a kickboxing instructor, and who also had an interest and some experience in cryptocurrency mining and investing. S. Rullan told Thompson he had connections that would allow S. Rullan to purchase a significant number of cryptocurrency miners to mine cryptocurrencies on a larger scale basis. S. Rullan also told Thompson his brother, Gustavo Rullan ("G. Rullan"), was a currency trader based in Washington, D.C. Thompson says Stolzman, S. Rullan, and G. Rullan all told him both Rullans were "experts in traditional currency trading, cryptocurrency, and cryptocurrency trading and investing."[2]

Thompson and the Rullans discussed forming a cryptocurrency venture, which would be funded with Thompson's Bitcoin holdings. Thompson made a brief test investment with S. Rullan pursuant to a BTC Transfer Agreement. The test investment produced a positive return, for which Thompson paid S. Rullan a $3,000 performance-based consulting fee. The parties then agreed to form a business together.

Thompson, Stolzman, and the Rullans formed eLedger, LLC ("eLedger") in January 2018. According to the Operating Agreement, the business of eLedger was to mine, trade, and transmit Bitcoin and other cryptocurrencies. Thompson owned 75%, Stolzman owned 5%, and each Rullan brother owned 10%. The LLC was manager-managed, and Stolzman served as its manager. Thompson funded the venture with 200.5 Bitcoin, worth approximately $2,000,000 at the time. The parties agreed S. Rullan would make the trading decisions. The parties agreed S. Rullan and G. Rullan would each take a salary of $10,000.00 per month for their work on eLedger.

After eLedger was formed, S. Rullan informed Thompson he could not acquire the number of cryptocurrency miners he had expected to acquire. S. Rullan and Thompson agreed eLedger would focus on trading cryptocurrency, while Stolzman and S. Rullan worked on the details of implementing large scale cryptocurrency mining. Thompson provided some investment directives to the other members of eLedger but had no involvement in eLedger's day-to-day operations, including the specific trades and trading strategy. Any specific trades and as the overall trading strategy for eLedger were made exclusively by S. Rullan and G. Rullan.

By 2019, eLedger had failed, and almost the entirety of Thompson's investment was lost. S. Rullan asserts eLedger failed because of a significant drop in the cryptocurrency market, along with a corresponding series of unforeseeable events, with specific details of those events provided in his affidavit. Thompson does not dispute those events occurred, but he argues eLedger failed because of S. Rullan's misrepresentations regarding his and his brother's cryptocurrency expertise, S. Rullan's failure to follow Thompson's investment directives, and S. Rullan's failure to provide information on the status of the venture during the course of the venture's limited existence.

---

[2] S. Rullan denies he made any such representation, but for purposes of this Motion, the Court assumes the truth of the facts in Thompson's affidavit.

2

ORDER ON SUMMARY JUDGMENT
Adversary No. 22-01226 KHT

In October 2020, Thompson sued Stolzman and the Rullans in the Douglas County, Colorado District Court, case number 2020 CV 030802 (the "State Court Case"), alleging violations of Colorado Securities law, false representations, non-disclosure and concealment, negligent misrepresentation, breach of fiduciary duty, breach of contract, conversion, civil theft, civil conspiracy, and unjust enrichment. Stolzman filed a Chapter 7 bankruptcy petition shortly thereafter, staying the State Court Case as to him. The State Court Case proceeded against the Rullan brothers, who filed a summary judgment motion supported by their affidavits. While that motion was pending, the Rullan brothers each filed their own bankruptcy petitions (S. Rullan filed his petition in Colorado, and G. Rullan filed his in Texas). The State Court Case was therefore stayed as to all remaining parties.

Thompson filed this adversary proceeding seeking a determination the debts owed to him by S. Rullan are non-dischargeable under 11 U.S.C. §§523(a)(2)(A), (a)(4), (a)(6), and/or (a)(19).[3] In his Motion, S. Rullan seeks summary judgment in his favor on each claim asserted in Thompson's Complaint.

## III.   SUMMARY JUDGMENT STANDARDS

Summary judgment is governed by Fed. R. Bankr. P. 7056, which incorporates Fed. R. Civ. P. 56, which provides, in relevant part, as follows:

(a)   Motion for Summary Judgment or Partial Summary Judgment. A party may move for summary judgment, identifying each claim or defense – or the part of each claim or defense – on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. The court should state on the record the reasons for granting or denying the motion.

(b)   . . . .

(c)   Procedures.

(1)   Supporting Factual Positions. A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

(A)   citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only),

---

[3] All references to "section" are to those of the Bankruptcy Code, 11 U.S.C.

3

ORDER ON SUMMARY JUDGMENT
Adversary No. 22-01226 KHT

admissions, interrogatory answers, or other materials; or

    (B)    showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

(2)    Objection That a Fact Is Not Supported by Admissible Evidence.  A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence.

(3)    Materials Not Cited.  The court need consider only the cited materials, but it may consider other materials in the record.

(4)    Affidavits or Declarations.  An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.

(d)    . . . .

(e)    Failing to Properly Support or Address a Fact.  If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may:

(1)    give an opportunity to properly support or address the fact;

(2)    consider the fact undisputed for purposes of the motion;

(3)    grant summary judgment if the motion and supporting materials – including the facts considered undisputed – show that the movant is entitled to it; or

(4)    issue any other appropriate order.

Fed. R. Civ. P. 56(a) - (e).

[The party moving for summary judgment] has the initial burden to show "that there is an absence of evidence to support the nonmoving party's case." *Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986)).  Once the moving party meets this burden, the burden shifts to the nonmoving party to demonstrate a genuine

ORDER ON SUMMARY JUDGMENT
Adversary No. 22-01226 KHT

issue for trial on a material matter. *Id.* In so doing, the nonmoving party may not rest solely on the allegations in its pleadings, but must instead, by its "own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex Corp.*, 477 U.S. at 324, 106 S.Ct. at 2553 (quoting Fed. R. Civ. P. 56(e)).

At the summary judgment stage, the judge's function is not to weigh the evidence and determine the truth of the matter. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). Nonetheless, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party," summary judgment in favor of the moving party is proper. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

*Concrete Works of Colorado, Inc. v. City & Cnty. of Denver*, 36 F.3d 1513, 1517-18 (10th Cir. 1994).

## IV.   DISCUSSION

S. Rullan seeks summary judgment on each of the four causes of action asserted in Thompson's complaint. The Court will discuss each cause of action below.

### A.   11 U.S.C. § 523(a)(2)(A).

Section 523(a)(2)(A) provides a discharge exception for debts obtained by false representation or actual fraud. The Court will consider the evidence relating to each.

#### 1.   False Representation.

To prove a claim based on false representation, Thompson must show: (1) S. Rullan made a false representation; (2) the representation was made with the intent to deceive Thompson; (3) Thompson relied on the representation; (4) Thompson's reliance was justifiable; and (5) Thompson was damaged as a result. *See Fowler Bros v. Young (In re Young)*, 91 F.3d 1367, 1373 (10th Cir. 1996) (identifying the five elements necessary to a determination of non-dischargeability under § 523(a)(2)(A), but requiring reasonable reliance); *Field v. Mans*, 516 U.S. 59, 69-76 (1995) (establishing justifiable reliance standard under § 523(a)(2)(A)).

Ordinarily, nondischargeability requires a representation of past or current facts, rather than a promise of future actions. *Albuquerque Auto Outlet, LLC v. Jacks (In re Jacks)*, 415 B.R. 536, 539 (Bankr. D.N.M. 2008).

"[A] debtor's misrepresentation of his intentions may constitute a false representation within the meaning of [§ 523(a)(2)(A)] if when the

ORDER ON SUMMARY JUDGMENT
Adversary No. 22-01226 KHT

representation was made the debtor had no intention of performing as promised." "To qualify as an affirmation of fact, a statement must be objective in nature, i.e., verifiable or capable of being proven true or false. Similarly, to be relied upon as a promise, a statement must be highly specific or definite."

*In re Pewtress*, Adv. No. 09-2491, 2010 WL 5108732, at *4 (Bankr. D. Utah Dec. 9, 2010) (quoting *In re Jacks*, 415 B.R. at 539; *Boud v. SDNCO, Inc.*, 54 P.3d 1131, 1135 (Utah 2002)).

It appears Thompson's § 523(a)(2)(A) claim is based on two representations: (1) S. Rullan said he had connections that would allow him to purchase a significant number of cryptocurrency miners (the "Miner Representation"); and (2) S. Rullan said his brother, G. Rullan, was a currency trader in Washington, D.C., and the two of them were "experts in traditional currency trading, cryptocurrency, and cryptocurrency trading and investing" (the "Expertise Representation").  The Court will discuss each in turn.

### a.  Miner Representation.

Thompson alleges the Miner Representation was false because after eLedger was formed, S. Rullan was not able to purchase a significant number of cryptocurrency miners.  To be considered a false representation under § 523(a)(2)(A), the representation must relate to a fact existing at the time of the statement.  Therefore, Thompson would need to present evidence supporting a conclusion S. Rullan had no connections to cryptocurrency miners or miner sellers at the time he made the statement.  In the alternative, Thompson could present evidence (direct or circumstantial) supporting a conclusion S. Rullan knew his connections would not be sufficient to purchase a significant number of cryptocurrency miners, or S. Rullan had no intention of using his connections and/or purchasing a significant number of cryptocurrency miners.  Evidence S. Rullan tried but failed to use his connections or purchase miners would not be sufficient to show S. Rullan made a false representation within the scope of § 523(a)(2)(A).

Here, Thompson has not identified any evidence to support a conclusion S. Rullan had no connections to cryptocurrency miners or miner sellers at the time he made the statement.  Further, Thompson has not identified any evidence to support a conclusion S. Rullan knew his connections would be insufficient to purchase a significant number of cryptocurrency miners or S. Rullan had no intention of using his connections and/or purchasing cryptocurrency miners.  Without such evidence, the Court cannot find a genuine issue remains for trial on whether the Miner Representation falls within the scope of § 523(a)(2)(A).  On a motion for summary judgment, Thompson had the burden of identifying such evidence, and he did not meet his burden.  S. Rullan is entitled to a judgment in his favor as a matter of law as to the Miner Representation.

### b.  Expertise Representation.

Thompson alleges the Expertise Representation was false because S. Rullan had only a few months' experience in cryptocurrency mining and investing before he made

6

ORDER ON SUMMARY JUDGMENT
Adversary No. 22-01226 KHT

the Expertise Representation.   To be considered a false representation under § 523(a)(2)(A), the representation must be objective in nature, i.e., verifiable or capable of being proven true or false.  Thompson would need to present evidence supporting a conclusion G. Rullan was not a currency trader in Washington, D.C.; G. Rullan had no experience or expertise in traditional currency trading, cryptocurrency, and cryptocurrency trading and investing; and/or S. Rullan had no experience or expertise in traditional currency trading, cryptocurrency, and cryptocurrency trading and investing.

Here, Thompson has not identified any evidence supporting a conclusion G. Rullan was not a currency trader in Washington, D.C. or G. Rullan had no experience or expertise in traditional currency trading, cryptocurrency, and cryptocurrency trading and investing.   Thompson has identified evidence supporting a conclusion S. Rullan's experience was limited.   But, Thompson has not identified evidence supporting the conclusion S. Rullan made an objectively false statement regarding his experience or expertise.   For example, had S. Rullan stated he had 2 years of cryptocurrency experience, when in fact he had only 2 months of experience, that would be an objectively false statement.   Had S. Rullan stated he had mined or traded a certain amount of cryptocurrency, when in fact he had not mined or traded that amount, that would be an objectively false statement.  Had S. Rullan stated he had completed training or obtained a degree or designation in the field, when in fact he had not done so, that would be an objectively false statement.  But the characterization of "expert," by itself, is not sufficiently objective in nature, i.e., verifiable or capable of being proven true or false, to qualify as a false representation under § 523(a)(2)(A).

Without evidence supporting a conclusion S. Rullan made an objectively false statement regarding his or his brother's experience or expertise, the Court cannot find a genuine issue remains for trial on whether the Expertise Representation falls within the scope of § 523(a)(2)(A).  On a motion for summary judgment, Thompson had the burden of identifying such evidence, and he did not meet his burden.  S. Rullan is entitled to a judgment in his favor as a matter of law as to the Expertise Representation.

### 2.     Fraudulent Intent.

Both false representation and actual fraud require a showing of fraudulent intent. Evidence of fraudulent intent could be direct or circumstantial.  As one bankruptcy court explained:

> Circumstantial evidence will often come in the form of indicia traditionally considered when assessing fraud, often referred to as badges of fraud.   For purposes of § 523(a)(2)(A), a common badge of fraud concerns whether a defendant made any effort to perform their obligation. *Chase Bank v. Brumbaugh (In re Brumbaugh)*, 383 B.R. 907, 912 (Bankr. N.D. Ohio 2007).  As this Court previously explained: "as a general rule, the greater the extent of a debtor's performance, the less likely it will be that they possessed an intent to defraud." *Ewing v. Bissonnette (In re Bissonnette)*, 398 B.R. 189, 194 (Bankr. N.D. Ohio. 2008).

7

ORDER ON SUMMARY JUDGMENT
Adversary No. 22-01226 KHT

*Bartson v. Marroquin (In re Marroquin),* 441 B.R. 586, 593 (Bankr. N.D. Ohio 2010). Here, it appears S. Rullan did make efforts to perform his obligations. In his Motion, S. Rullan offered an extensive explanation of why his efforts were unsuccessful. Thompson argues S. Rullan would have been more successful (or less unsuccessful) had he pursued more conservative investment strategies. But evidence S. Rullan chose poor investment strategies is not the same as evidence S. Rullan acted with fraudulent intent.

In this Court's experience, circumstantial evidence supporting a conclusion of fraudulent intent has included evidence an individual took large cash withdrawals, spent corporate funds on luxury goods or travel, or otherwise received or used more corporate funds than his agreed-upon salary. But here, Thompson has not identified any such evidence. In fact, Thompson has presented no evidence of S. Rullan's financial condition or financial transactions before, during, or after his involvement with eLedger. S. Rullan is a debtor in bankruptcy. His financial information may be obtained through discovery, including subpoenas to financial and other institutions under Fed. R. Bankr. P. 2004 or under other applicable rules of procedure. It does not appear Thompson engaged in efforts to obtain the information necessary to prove his claim.

Thompson offered a text message exchange from January 2019,[4] in which Thompson sent the following message to S. Rullan:

> I've been thinking about this and let me tell you where I think things went wrong. We were a company. I had 75%, you and Gus had 20%. I didn't give you guys a lot of direction, but there were specific things that I asked for. From the beginning I talked about keeping a full accounting of every trade. I asked for regular reports, access to the trading account to monitor balances, a cold wallet with half the funds, smaller, lower risk trades, and certainly never gave approval for margin trading (there should because have been no need). I also asked for notes from meetings with CPAs and lawyers that you claimed to be meeting with in PR. In all of these cases you told me you would do it and you never did. My guess is that it was to hide bad trades. Here's they [sic] problem: you took away my ability to run the business or make any business decisions as far as went [sic] to cut loses [sic], stop trading, or whatever. I asked you for transparency and you hid everything. You essentially ran the entire business like every decision was yours. Had you thought of me as your boss and done what I asked, and things still went to hell, at least you wouldn't have had to take all the blame. As it stands, you basically too [sic] all my money and ran away and that was the last time I ever saw it. I believe that you failed in your fiduciary responsibility to this company but [sic] removing me and Stolzman (the Manager) from the ability to make it implement any business decisions.

S. Rullan responded as follows: "I'm not disagreeing with anything other than I ran with your money."

---

[4] In his Objection, Thompson states the text messages were exchanged in January 2023. The Court assumes the 2023 was a typographical error.

ORDER ON SUMMARY JUDGMENT
Adversary No. 22-01226 KHT

To the extent S. Rullan made poor trading decisions and failed to follow Thompson's directives,[5] S. Rullan may have breached the parties' agreement.  He may have been negligent.   But neither breach of contract nor negligence is sufficient to establish a claim under § 523(a)(2)(A).  "[A] mere inability or failure to perform is not, in itself, sufficient evidence of fraudulent intent [for purposes of § 523(a)(2)(A)]." *Cobra Well Testers, LLC v. Carlson (In re Carlson)*, No. 06-8158, 2008 WL 8677441, at *3 (10th Cir. Jan. 23, 2008) (quoting *Williams v. Zachary (In re Zachary)*, 147 B.R. 881, 883 (Bankr. N.D. Tex. 1992)).  To prevail on a § 523(a)(2)(A) claim, Thompson must show S. Rullan acted with an intent to defraud.  Thompson has not presented evidence supporting such a conclusion.

Thompson argues S. Rullan's intent is a factual issue, which must be resolved by the finder of fact.  But, in the absence of evidence to support a finding of fact, summary judgment is appropriately granted:

> Although summary judgments should be granted with particular caution when state of mind is at issue, this "does not mean that a party against whom summary judgment is sought is entitled to a trial simply because he has asserted a cause of action to which state of mind is a material element.  There must be some indication that he can produce the requisite quantum of evidence to enable him to reach the jury with his claim."  Promises that evidence will be forthcoming at trial are insufficient.  The possibility that the fact finder might disbelieve the defendant's assertions of innocence is also not enough to forestall the entry of summary judgment.

*Bryant v. Tilley (In re Tilley)*, 286 B.R. 782, 792 (Bankr. D. Colo. 2002).

As the party seeking summary judgment, S. Rullan had the burden of showing Thompson's § 523(a)(2)(A) claim was not supported by the evidence.  S. Rullan met that burden.   Thompson was then required to go beyond the pleadings and designate evidence of specific facts showing a genuine issue for trial – "the evidence is such that a reasonable [factfinder] could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  To designate evidence establishing a genuine issue, Thompson was required to cite "to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials."  Fed. R. Civ. P. 56(c)(1)(A).  He

---

[5] On the one hand, Thompson asserts he was inexperienced in cryptocurrency investing, he deferred to the Rullans' perceived expertise, he was entirely reliant on the efforts of the Rullans to accomplish a return on his investment, and S. Rullan had sole responsibility for all trading decisions.  On the other hand, Thompson asserts S. Rullan should not have made trading or investment decisions without Thompson's participation or approval.  At this time, when all inferences must favor Thompson, the Court will ignore the logical inconsistency of those two positions.

9

ORDER ON SUMMARY JUDGMENT
Adversary No. 22-01226 KHT

did not meet his burden.[6]   Summary judgment is appropriately entered in favor of S. Rullan on Thompson's § 523(a)(2)(A) claim.

### B.     11 U.S.C. § 523(a)(4).

Section 523(a)(4) provides a discharge exception for debts obtained by "fraud or defalcation while acting in a fiduciary capacity."  Whether a debtor is a fiduciary is a matter of federal law, although state law is relevant to the inquiry.  *Fowler Bros. v. Young (In re Young)*, 91 F.3d 1367, 1371 (10th Cir. 1996).  In the context of 11 U.S.C. § 523(a)(4), the term "fiduciary" has a narrow meaning.  General fiduciary duties under state law are insufficient to form the basis of nondischargeability under § 523(a)(4).  *See Horejs v. Steele (In re Steele)*, 292 B.R. 422, 434 (Bankr. D. Colo. 2003) (corporate director's general fiduciary duties are, without more, insufficient to satisfy the requirements of § 523(a)(4)).  In order to establish a fiduciary duty under § 523(a)(4), Thompson must show either an express or a technical trust.  *Id.*

An express trust requires the intent to create a trust, a clearly defined trust *res*, and specific trust duties.  *See Griego v. Gonzales (In re Gonzales)*, 483 B.R. 1, 11-12 (Bankr. D.N.M. 2012).  Under Colorado law, creation of an express trust requires unequivocal and unambiguous language or conduct.  *Morgan v. Wright*, 399 P.2d 788, 790-91 (Colo. 1965).  Thompson offered no documents or statements showing the parties' intent to create a trust, a clearly defined trust *res*, or specific trust duties.

A technical trust can arise as a result of a state statute imposing specific trust duties with respect to a specific trust *res*.  *Griego v. Gonzales*, 483 B.R. at 11-12. Thompson has not cited any such state statute.

In the absence of evidence of an express trust or a technical trust, this Court must grant summary judgment in favor of S. Rullan.  And, even if Thompson had established a fiduciary duty, he has not set forth facts showing S. Rullan violated that fiduciary duty or acted with the required mental state.  *See Bullock v. BankChampaign, N.A.*, 569 U.S. 267, 273-74 (2013) (holding a plaintiff must establish the defendant acted with a specific mental state, either actual knowledge of wrongdoing, or "reckless conduct of the kind that the criminal law often treats as the equivalent," including actions where the fiduciary "'consciously disregards' (or is willfully blind to) 'a substantial and unjustifiable risk' that his conduct will turn out to violate a fiduciary duty.").

Thompson has failed to meet his burden of identifying and designating evidence of specific facts showing there is a genuine issue for trial.  Summary judgment is appropriately entered in favor of S. Rullan on Thompson's § 523(a)(4) claim.

---

[6] Attaching an entire deposition transcript, without referencing any of the testimony or other evidence contained therein, is insufficient to meet the burden of designating "particular parts of the materials in the record."

### C.     11 U.S.C. § 523(a)(6).

Section 523(a)(6) provides a discharge exception for debts obtained by "willful and malicious injury by the debtor to another entity or to the property of another entity." 11 U.S.C. § 523(a)(6).  The Supreme Court has held "willfulness" requires "a deliberate or intentional injury, not merely a deliberate or intentional act that leads to injury." *Kawaauhau v. Geiger*, 523 U.S. 57, 61 (1998).  Thompson must show S. Rullan "intend[ed] 'the consequences of an act,' not simply 'the act itself.'" *Id*. at 61-62 (quoting Restatement (Second) of Torts § 8A, Comment a, p. 15 (1964)).  Here, Thompson has not set forth facts from which this Court could find S. Rullan acted with the specific intent to injure Thompson.

Thompson has failed to meet his burden of identifying and designating evidence of specific facts showing there is a genuine issue for trial.  Summary judgment is appropriately entered in favor of S. Rullan on Thompson's § 523(a)(6) claim.

### D.     11 U.S.C. § 523(a)(19).

Section 523(a)(19) provides a discharge exception for the following debt:

(A)     is for –
   (i)     the violation of any of the Federal securities laws (as that term is defined in section 3(a)(47) of the Securities Exchange Act of 1934), any of the State securities laws, or any regulation or order issued under such Federal or State securities laws; or
   (ii)    common law fraud, deceit, or manipulation in connection with the purchase or sale of any security; and

(B)     results, before, on, or after the date on which the petition was filed, from –
   (i)     any judgment, order, consent order, or decree entered in any Federal or State judicial or administrative proceeding;
   (ii)    any settlement agreement entered into by the debtor; or
   (iii)   any court or administrative order for any damages, fine, penalty, citation, restitutionary payment, disgorgement payment, attorney fee, cost, or other payment owed by the debtor[.]

11 U.S.C. § 523(a)(19).  Another division of this court has explained these requirements as follows:

First, the Plaintiffs must establish that the debt is for violation of securities laws or for fraud in connection with the purchase or sale of a security (the "Subsection A requirement").  In addition, the debt must be memorialized in a judicial or administrative order or settlement agreement (the "Subsection B requirement").  If Plaintiffs cannot establish both requirements, their claim will fail.

ORDER ON SUMMARY JUDGMENT
Adversary No. 22-01226 KHT

*Faris v. Jafari (In re Jafari),* 401 B.R. 494, 496 (Bankr. D. Colo. 2009).

Here, S. Rullan argues the Court must grant summary judgment in his favor because Thompson has not met the Subsection B requirement – he does not have a judicial or administrative order or settlement agreement memorializing the amount S. Rullan owes him.  The Court cannot find, as a matter of law, it is too late for Thompson to obtain a judicial or administrative order or settlement agreement memorializing S. Rullan's debt to Thompson.  Section 523(a)(19) anticipates such order or agreement may be obtained after a bankruptcy filing.  But even if Thompson were able to obtain a judgment against S. Rullan in the State Court Case, he would still need to show this Court the debt was for a violation of securities laws or for fraud in connection with the purchase or sale of a security (the Subsection A requirement).  Here, the Court cannot find he has made that showing.

It is not clear Thompson has identified any document that would meet the definition of "security" within applicable law.  But even if he had, securities fraud requires a showing of fraud.[7]  Fraud requires scienter.[8]  As the Tenth Circuit Court of Appeals has explained:

> The term "scienter" has been defined by the Supreme Court of the United States as "a mental state embracing intent to deceive, manipulate, or defraud." *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 193 n. 12, 96 S.Ct. 1375, 47 L.Ed.2d 668 (1976).  The Supreme Court has further elaborated on the meaning of the term by stating: "The words 'manipulative or deceptive' used in conjunction with 'device or contrivance' strongly suggest that § 10(b) was intended to proscribe knowing or intentional misconduct." *Id*. at 197, 96 S.Ct. 1375.  Recklessness, defined as "conduct that is an extreme departure from the standards of ordinary care, and which presents a danger of misleading buyers or sellers that is either known to the defendant or is so obvious that the actor must have been aware of it," can also satisfy the scienter requirement for Section 10(b).  *Anixter v. Home– Stake Prod. Co*., 77 F.3d 1215, 1232 (10th Cir. 1996) (citations and quotation marks omitted).  Simple negligence, however, does not satisfy the scienter requirement.  *See Bd. of County Comm'rs of San Juan County v. Liberty Group*, 965 F.2d 879, 883 (10th Cir. 1992); *Ernst & Ernst*, 425 U.S. at 197, 96 S.Ct. 1375.

*City of Philadelphia v. Fleming Companies, Inc*., 264 F.3d 1245, 1258 (10th Cir. 2001). Here, Thompson has not presented evidence by which a rational factfinder could find S. Rullan acted with the mental state required for securities fraud.  Summary judgment is appropriately entered in favor of S. Rullan on Thompson's § 523(a)(19) claim.

---

[7] *See People v. Thompson*, 474 P.3d 79, 84 (Colo. Ct. App. 2018) ("The securities fraud statute requires that fraud must be perpetrated in connection with the offer, sale, or purchase of any security."), *aff'd*, 471 P.3d 1045 (Colo. 2020).

[8] *Agile Safety Variable Fund, L.P. v. RBS Citizens,* N.A., 793 F.Supp.2d 1248 (D.Colo. 2011) (Colorado securities fraud requires scienter).

ORDER ON SUMMARY JUDGMENT
Adversary No. 22-01226 KHT

## V.        CONCLUSION

For the reasons discussed above, the Court finds Thompson has not demonstrated a genuine issue for trial on any of his claims for relief.  The Court will therefore grant judgment in favor of S. Rullan on each claim asserted in Thompson's complaint.

Accordingly,

IT IS HEREBY ORDERED that a separate judgment shall enter in favor of S. Rullan, dismissing Thompson's complaint.

Dated July 12, 2024                                    BY THE COURT:

Kimberley H. Tyson
United States Bankruptcy Judge